IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVERETT DONNOVAN WILLIAMS, | : | Civil No. 3:24-cv-1321 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN, ALLENWOOD-LOW, | : | |
| Respondent | : | |

### MEMORANDUM

Petitioner Everett Donnovan Williams ("Williams") initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons ("BOP") incorrectly calculated and applied his earned time credits under the First Step Act ("FSA"). (Doc. 1). For the reasons that follow, the Court will deny the habeas petition.

**I.   Background**

Williams is serving a 324-month term of imprisonment imposed by the United States District Court for the Southern District of Florida for his conviction of conspiracy to import five kilograms or more of cocaine into the United States and conspiracy to possess with intent to deliver five kilograms or more of cocaine. (Doc. 5-3). His current projected release date is April 15, 2026, via First Step Act release. (*Id.*).

The Administrative Remedy Generalized Retrieval reveals that, while in BOP custody, Williams filed a total of twelve administrative remedies. (Doc. 5-4). None of those remedies relate to the claims in the habeas petition. (*Id.*).

In his § 2241 petition, Williams alleges that he is entitled to additional earned time credits under the FSA towards his release date, or placement in a Residential Reentry Center ("RRC") or halfway house until the Court resolves his FSA earned time credit dispute. (Doc. 1). Respondent counters that the § 2241 petition must be dismissed based on Williams' failure to exhaust his administrative remedies before proceeding to federal court. (Doc. 5). Alternatively, Respondent seeks dismissal on the following grounds: (1) the BOP properly calculated and applied Williams' FSA time credits; and (2) Williams has no right to prerelease custody and the BOP did not abuse its discretion by denying him placement in an RRC. (*Id.*). The Court addresses each argument in turn.

## II.   Discussion

### A.   Exhaustion of Administrative Review

Although there is no explicit statutory exhaustion requirement for § 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986)); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and

provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted). The Bureau of Prisons has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. *See generally* 28 C.F.R. §§ 542.10-.19. That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel. *See id.* §§ 542.13-.15. No administrative remedy appeal is considered fully exhausted until reviewed by the General Counsel. *Id.* § 542.15(a).

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. *See Moscato*, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982).

Williams' Administrative Remedy Generalized Retrieval report demonstrates that he did not file any administrative remedies concerning FSA time credits or placement in a Residential Reentry Center or halfway house. (Doc. 5-4).

Williams concedes that he did not exhaust administrative remedies regarding his present claims. (Doc. 1, pp. 3-5). He suggests that exhaustion should be excused as futile

3

because he is "in custody illegally" and because the statutory construction exception to administrative exhaustion applies. (*Id.*). Even if Williams thought pursuit of his administrative remedies would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" *See Ross v. Martinez*, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting *Malvestuto v. Martinez*, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009)).

First, Williams appears to argue that he should not have to exhaust his administrative remedies due to time restraints and he should be released before the process is completed. The Court is unaware of any decision from the Third Circuit Court of Appeals holding that a federal prisoner may be excused from the exhaustion requirement on that ground. Additionally, district courts within the Third Circuit have repeatedly rejected the argument that an inmate can be excused from the exhaustion requirement simply because his projected release date is approaching, and he may not complete his administrative appeal before the release date. *See, e.g., Brown v. Sage*, No. 22-cv-325, 2022 WL 1295414, at *1-2 (M.D. Pa. April 29, 2022); *Malvestuto v. Martinez*, No. 09-cv-1339, 2009 WL 2876883, at *2-3 (M.D. Pa. Sept. 1, 2009); *Bartolotti v. Knight*, No. 22-cv-6137, 2022 WL 17959577, at *1-2 (W.D. Pa. Dec. 27, 2022); *Rosales v. Hollingsworth*, No. 15-cv-3840, 2015 WL 4314572, at *2 (D.N.J. July 14, 2015).

Second, Williams argues that the statutory construction exception applies. The Court recognizes that "exhaustion is not required with regard to claims which turn only on statutory construction." *Coleman v. U.S. Parole Com'n*, 644 F. App'x 159, 162 (3d Cir. 2016). In support of his argument, Williams cites to *Goodman v. Ortiz*, No. 20-7582, 2020 WL 5015613 (D.N.J. Aug. 25, 2020). In *Goodman*, the parties did not dispute that the inmate-petitioner had successfully participated in several programming activities that met the requirements of the FSA or had earned a specific number of earned time credits. *See Goodman*, 2020 WL 5015613, at *2. Instead, the court considered whether the FSA required that the earned time credits earned by the petitioner be applied before a certain date. *See id.* The court concluded that the inmate-petitioner was exempt from the administrative exhaustion requirement because the matter "present[ed] a narrow dispute of statutory construction" and because "habeas relief should be granted." *See id.* at *3. The instant case, however, not only involves when Williams is eligible for the application of earned time credits, but also a dispute as to whether the BOP properly applied its agency calculations. The latter issue is unrelated to statutory construction and, therefore, the exhaustion requirement cannot be excused. *See Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *3 (M.D. Pa. Apr. 29, 2020) (noting that the petitioner "has clearly failed to exhaust administrative remedies with respect to the time credit he requests").

Williams' claim is the type of FSA time credit dispute that must first be presented to BOP officials and fully exhausted. Because Williams did not exhaust his administrative

5

remedies, and no exception applies, his § 2241 petition is subject to dismissal. Erring on the side of caution, the Court will alternatively address the merits of Williams' habeas petition.

### B. Williams has Received the Maximum Allowable First Step Act Time Credits towards Supervised Release

Williams contends that the BOP refused to provide him with 600 days of First Step Act time credits towards early transfer to supervised release. (Doc. 1, pp. 5-8). He seeks placement in a halfway house or, in the alternative, immediate release. (*Id.*). In his answer, Respondent states that the BOP already applied the maximum 365 days towards early transfer to supervised release. (Doc. 5, pp. 9-10).

Under the First Step Act, federal prisoners who meet certain criteria, including engaging in recidivism reduction programs, are entitled to earn a number of good conduct credits, to a maximum of 365 days' worth, to be applied towards early supervised release. *See* 18 U.S.C. § 3632(d)(4). Specifically, the First Step Act provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i); 28 C.F.R. § 523.42(c)(1). "A prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii); 28 C.F.R. § 523.42(c)(2). The BOP may apply these time

credits "toward[s] time in prerelease custody," such as RRC or home confinement, or early transfer to supervised release, i.e., early satisfaction of an inmate's term of imprisonment. 18 U.S.C. §§ 3632(d)(4)(C), 3624(g); 28 C.F.R. § 523.44(a)(1).

More specifically, if a prisoner's sentence included a term of supervised release, the BOP "may transfer the prisoner to begin any such term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of time credits under [18 U.S.C. §] 3632." 18 U.S.C. § 3624(g)(3) (emphasis added). In essence, applying time credits in this manner will reduce an inmate's time spent in BOP custody. On the other hand, as to prerelease custody, federal law allows the BOP to place inmates in a RRC for up to 12 months, or home confinement for up to 6 months, prior to their date of transfer to supervised release. 18 U.S.C. § 3624(c)(1), (2).

Respondent has submitted the declaration of Keith Ball, a Unit Manager at LSCI-Allenwood, along with Williams' FSA time credit assessment. (Doc. 5-2; Doc. 5-6). These documents confirm that Williams has already received the maximum amount of time credits, 365 days, towards early supervised release. (*Id.*; *see* 18 U.S.C. § 3624(g)(3)). As a result, the BOP refused to provide Williams with additional days towards early supervised release because he had already received the statutory maximum. (Doc. 5-2; Doc. 5-6). Because Williams has received the statutory maximum number of credits towards early supervised release, the Court must deny the habeas petition. 18 U.S.C. § 3624(g)(3).

### C. Williams does not have a Liberty Interest in Eligibility for Pre-Release Custody & the BOP Referred Williams for Pre-Release Placement

Williams claims that the BOP improperly denied his placement in an RRC. (Doc. 1). Respondent argues that Williams does not have a liberty interest in eligibility for pre-release custody and, further, that the BOP has fulfilled its statutory duty and referred Williams for RRC placement. (Doc. 5, pp. 10-15).

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in a particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir. 2005).[1]

---

[1] Williams is not challenging the execution of his sentence within the exception provided for in *Woodall*. In *Woodall*, the Third Circuit held that a prisoner could bring a § 2241 petition challenging a BOP regulation that limited placement in a Community Corrections Center because the BOP was not "carrying out" Woodall's sentence as directed. The Court found that Woodall's claims "cross[ed] the line beyond a challenge to, for example, a garden variety prison transfer." *Woodall*, 432 F.3d at 243. "[T]o challenge the execution of his sentence under § 2241, [an inmate] would need to allege that BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *Cardona v.*

8

On April 9, 2008, the Second Chance Act of 2007, Pub.L. No. 110-199, Title II, § 251, 122 Stat. 657, 697, codified at 18 U.S.C. §§ 3621, 3624, went into effect. The Second Chance Act provides:

> (c) Prerelease custody. —
>
> (1) In general. —The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority. —The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

18 U.S.C. § 3624(c). The Act requires the BOP "to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" *Wilson v. Strada*, 474 F. App'x 46, 46-47 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)). In doing so, the BOP must consider: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence [ ] recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission." 18 U.S.C. § 3621(b); *see also Vasquez*, 684 F.3d at 433.

---

*Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012). Here, Williams does not allege that his FSA time credit calculation and eligibility for pre-release custody conflicts with his sentence.

9

Likewise, the First Step Act does not mandate that the BOP place prisoners in a halfway house for six months or any other period. Under 18 U.S.C. § 3624(c), the BOP is authorized to consider placing an inmate in a community correctional facility for up to twelve months. However, a prisoner is neither entitled nor guaranteed such placement for any minimum amount of time. 18 U.S.C. § 3624(c). *See Woodall*, 432 F.3d 235 at 240. Such placement decisions are solely within the discretion of the BOP. The First Step Act did not alter this rule.[2]

In a nutshell, when considering an individual's eligibility for pre-release placement in an RRC, the BOP is required to ensure that decisions are made: (A) consistent with the five factors in 18 U.S.C. § 3621(b); (B) on an individualized basis; and (C) so that the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration. 18 U.S.C. § 3624(c)(6).

The record in this case clearly establishes that Williams' Unit Team gave him individualized consideration consistent with the five factors of section 3621(b). (Doc. 5-7). They found there was available bed space near Miami, Florida, they considered the nature of his offense, his institutional disciplinary history and noted that he had several incident reports issued against him, they considered his judgment and commitment order, and noted

---

[2] The First Step Act expands the Second Chance Act. The First Step Act allows eligible inmates to earn additional time credits for successfully participating in evidence-based recidivism reduction programming or productive activities. *See The First Step Act of 2018*, available at https://crsreports.congress.gov/product/pdf/R/R45558 (last visited September 16, 2024). Nothing in the Second Chance Act or the First Step Act entitles an inmate to guaranteed placement in an RRC.

that the Sentencing Commission has no policy concerning RRC placement. (*Id.*). The Unit Team also noted that Immigration and Customs Enforcement lodged a detainer against Williams. (*Id.*).

After reviewing Williams' petition and the applicable statutes, the Court finds that the BOP has the discretion to determine if, and when, to transfer Williams to RRC. Consistent with 18 U.S.C. § 3621(b), the BOP individually considered Williams under the factors relevant to RRC placement and, indeed, referred him for placement in an RRC, with a placement date of September 8, 2024. The referral date remains pending. (Doc. 5-2, p. 3 ¶ 8). Williams' purported disagreement with the BOP's RRC placement recommendation does not establish a constitutional violation, as nothing in the Second Chance Act, First Step Act, or § 3621(b) entitles an inmate to any guaranteed placement in an RRC. *See Woodall*, 432 F.3d at 244-51 (holding, in exercising its discretion to make halfway house placement decisions, the Bureau must consider the factors set forth in § 3621(b); "[h]owever, that the [Bureau] may assign a prisoner to a halfway house does not mean that it must."); *see also Beckley v. Miner*, 125 F. App'x 385, 389 (3d Cir. 2005) (holding, "[i]t is well settled, and the parties agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners.").

## III. Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Doc. 1). A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: September 16, 2024